## 46404. SECURITY DEVELOPMENT & INVESTMENT COMPANY v. BEN O'CALLAGHAN COMPANY.

CLARK, Judge. Ben O'Callaghan sued Security Development & Investment Company on a past due promissory note for principal, interest, and attorney's fees. The facts in connection with the execution and delivery of this note are detailed hereinafter.

Defendant denied the material allegations. Answering further, it denied any indebtedness to plaintiff; setting up that there was no consideration given for the note; that the consideration given by plaintiff for the note had failed; that the note was signed under duress and through a false representation by plaintiff that plaintiff had finished its work under a construction contract between the two parties; and that plaintiff had in this contract agreed with defendant to install in a multi-apartment project a complete ventilation, heating and

air-conditioning system for $283,009, for which $245,000 had been paid, although plaintiff has never completed the same and the cost to do so is in excess of the amount sued for.

Defendant also made four counterclaims, each for $50,000. The first counterclaim alleged a breach of contract in that the system contemplated by their contract was never completed by plaintiff.

The second counterclaim alleged that plaintiff was to construct and install the complete system and would guarantee all material and workmanship for a period of one year from date of completion, but that after work began defendant had encountered many defects in workmanship and materials, and since June of 1969 has informed plaintiff of same but plaintiff has refused to put the system in proper condition.

The third counterclaim alleges plaintiff falsely represented it had completed the system, when in fact it was never completed and has never worked properly; that plaintiff has violated an implied warranty of fitness for a particular purpose under UCC 109A-2—315 and has refused despite demand to complete the system properly.

Counterclaim 4 alleges plaintiff on October 14, 1969, misinformed defendant that the system was completed and properly installed in order to induce defendant to execute the note sued on; that defendant relied on the representations and lacked the expertise to determine otherwise.

A trial was had resulting in a verdict for the plaintiff in the amount sued for, less an allowance to defendant for a water treatment system.

Defendant's appeal is from the denial of its motion for new trial as amended which enumerates such denial as error together with several evidentiary rulings and objections to portions of the charge of the court.

It appears from the evidence plaintiff designated as subcontractor entered into a contract with defendant under which plaintiff was to install the air-conditioning and ventilation system plus several other items in a multi-

apartment project being built by defendant.

In their contract (styled "subcontract") reference is made to a 240-unit apartment project to be built in strict accordance with plans and specifications prepared by a certain architect. The contract in part recites:

"Subcontractor will furnish all labor and materials, equipment and supervision to install a complete heating, air-conditioning and ventilation system in strict accordance with all requirements of the plans and specifications. Particular mention of this work is made in section 15-B of the specifications and this subcontract includes all work contained therein and as described below . . ."

The contract further stipulates: "*All material and workmanship shall be guaranteed for one year from date of completion.* Also 24 hour service and maintenance of gas engine units, for one year after completion, is included in this subcontract. All work shall be performed in complete harmony with other trades to the best interest of the job. *In the event of change orders involving more or less work, it is hereby understood that the subcontract will be increased or decreased at the same unit prices used on the original quotation . . . Weekly payments will be made on Friday for requisitions approved Monday of the same week and 10% will be withheld until all work is completed to the satisfaction of the project manager . . ."* (Emphasis supplied.)

The above contract was executed on February 22, 1968, and construction began in April. The 240 units were incorporated in some 40 buildings and were intentionally built in staggered groups so that some would be ready for occupancy and income production while others would be in various stages of construction and completion.

Mr. O'Callaghan testified his company had finished its contract work on the project by June or July, 1968, and that its final payment plus the 10% retainage plus payment for certain extras was then due. A bona fide dispute arose as to the amount owed, O'Callaghan claiming $41,636, but an understanding was reached, concerning

which he testified: "And we shook hands on it at 36,5 (meaning $36,500) with the understanding a note, interest-bearing note, was to be given. The date on the note and the terms on which it was paid was based upon what they saw as their closing date for that project when they would obtain additional funds, which they felt like would be around November 15th or November 20th but might go as long as January 20, 1970, when their commitment ran out on this job. And so that was the basis on which the terms of the note came into being, that's when they would be able to meet my note, to redeem it."

There was evidence defendant's attorney drafted the note and that two or three days later the president of the defendant company executed and delivered it to the plaintiff.

The note is a promise to pay a certain sum ($36,500) on a certain day (November 19, 1969). Except with regard to the due date it provides: "In the event the permanent loan closing in the construction of the . . . apartments has not been closed by November 19, 1969, the undersigned may extend the maturity day of the within note until one (1) day following said closing, but in no event shall said maturity date be extended beyond January 19, 1970."

1. The note sued on was by its terms an unconditional promise to pay a certain sum on a certain day as defined in the note. The case was tried for 5 days and the contentions of both sides were fully presented to the jury. The jury was authorized from the evidence to find, in answer to the defenses raised, that the defendant maker had given it to the plaintiff in discharge of the final payment (the amount of which had been disputed but was negotiated and agreed upon) owed to plaintiff under an installation contract between the parties which the plaintiff and the defendant had agreed and acted upon as completed. As regards the general grounds of the motion for new trial, "[T]he only query is whether the evidence supported the verdict. *Southern R. Co. v. Adams,* 14 Ga.

App. 366 (80 SE 912); *Brown v. Bank of Cumming,* 144 Ga. 655 (87 SE 887)." *Daniels v. Hartley,* 120 Ga. App. 294 (170 SE2d 315). A new trial was not authorized on the general grounds.

2. Error is enumerated with regard to the portions of the court's charge to the jury which quoted *Code* §§ 20-201, 20-106, 20-703, and 3-107.

Appellant urges these charges authorized the jury to disregard completely the written contract of the parties, that there was no basis for indicating to the jury that any oral agreements were involved; that the written contract was not ambiguous and was therefore the measure of all the duties and obligations between the parties.

In connection with the suit on the note, the defenses thereto and the counterclaims, the jury had before it the written installation contract which called for a precise amount of work and material for a stated price. However, the contract also expressly recognized that more or less work and material than that specified might be required and that the price would be changed thereby. As to these items the contract obviously contemplated further bargaining. There was evidence extra work items were performed which were the subject of negotiation between the parties.

The trial judge did not err in charging the jury on the general legal principles of the contracts complained of. It is the duty of the court to charge the law applicable to the evidence and the contentions of the parties. *Rutland v. Jordan,* 111 Ga. App. 106, 107 (140 SE2d 498); *American Fire &c. Co. v. Grizzle,* 108 Ga. App. 496, 497 (133 SE2d 400).

3. The appellant also contends the court erred by permitting over objection oral testimony to vary and contradict the warranty provision within the written contract, the alleged breach of which constituted the basis of some of the counterclaims. The warranty was: "All material and workmanship shall be guaranteed for one year from date of completion."

There was evidence the 240 apartment units were incorporated in some 35 or 40 buildings which were intentionally built in staggered groups so that some would become ready for occupancy and income production while others would still be in various stages of construction and completion. O'Callaghan was asked: "What does this stage-by-stage construction you have just talked about have to do with establishing an average warranty date?" Defendant objected that the contract speaks for itself and it would be for the jury to determine the warranty date. This objection was overruled. Later there was again testimony by O'Callaghan regarding the warranty arrangements in such projects where some of the buildings are put into operation often months before the remaining buildings in the project are ready. A similar objection was made and overruled.

There was no error in overruling these objections. The testimony had no effect in varying the warranty. Of necessity the application of the warranty required a determination of the date of completion. There was evidence that some of the largest components of the system had been in full operation since early in the building program, yet part of the installation remained idle or unused until late in the building program. There was evidence of meetings and communications between the parties of a mutual desire to establish an "average warranty date" for the total installation rather than attempting to use the start-up dates of each individual unit within the system.

We agree with the position the appellant took during the trial of the case, to wit: "They warranted the work, and I think this is a question for the jury, what is one year from the date of completion . . . The contract says all material and work shall be guaranteed for one year from date of completion. I think that would be a jury question as to what that means."

4. One of the defendant's counterclaims was predicated upon breach of contract by failing to complete the installation. The trial court charged the jury that one injured

by a breach of contract has a duty to mitigate damages. This charge was excepted to and is enumerated as error. There was no error. *Code* § 20-1410.

5. There having been no objection made to that portion of the court's charge asserted as error in enumeration 8, this enumeration will not be considered. *Baxter v. Bryan,* 122 Ga. App. 817 (2) (178 SE2d 724); *Code Ann.* § 70-207 (Ga. L. 1965, pp. 18, 31, as amended).

6. Defendant requested the court to charge that where a plaintiff bases his right to recover upon the entire contract, he cannot recover unless he has performed all of his obligations; and a party seeking enforcement of an executed contract must show performance of all of said contract upon his own part. There was no error in refusing these requests to charge.

Plaintiff's suit was not based upon the installation contract but upon an unconditional promissory note. A request to charge must be properly adjusted to some legal principle involved in the case. If it is not, denial of the request is proper. *Slaughter v. Linder,* 122 Ga. App. 144 (2b) (176 SE2d 450); *Bowers v. Fulton County,* 122 Ga. App. 45, 48 (176 SE2d 219).

7. Enumeration of error number 10 is that the court erred by allowing into evidence over objection a copy of a notarized affidavit by the defendant's president. The argument is made in appellant's brief that it was error to admit the document in evidence for the reason it was not authenticated and was merely a copy with no accounting for the original and thus violated the best evidence rule. The transcript of evidence shows the document was exhibited to the witness. He testified that he signed the original before a notary public.

It is generally held: "A clear and explicit admission of the correctness of a copy by the party against whom it is to be used is sufficient to justify its admission in evidence." 32A CJS 159, Evidence, § 819. Furthermore, to constitute reversible error, there must be error and it must be harmful. *Harrison v. Hester,* 160 Ga. 865 (3) (129 SE

528); *Fricks v. Cole,* 109 Ga. App. 143, 147 (135 SE2d 512). Harm has not been shown herein.

8. The eleventh enumeration is that the court erred in admitting certain documents in evidence which came from the files of the Citizens & Southern National Bank and identified by its Construction Loan Supervisor. Each document is a completed "Request for Construction Loan Advance" form submitted to the bank by defendant. Each is accompanied by a "breakdown" prepared by defendant for each item of work involved in the project. It shows the cost of each item, the percentage completion of each item, the amount of loan advance being requested toward each, and the total already advanced toward each. The breakdown is totaled so as to show the total cost, the total advance being requested, and the total which has already been received pursuant to past requests. Officers of the defendant identified their signatures on the documents.

These documents were admissible in evidence as records made in the ordinary course of business, and thus there was no error. *Code Ann.* § 38-711.

*Judgment affirmed. Hall, P. J., and Eberhardt, J., concur.*

ARGUED SEPTEMBER 16, 1971—DECIDED JANUARY 24, 1972— REHEARING DENIED FEBRUARY 22, 1972.

*Rose, Hunt, Stern & Dailey, George S. Stern, J. Michael Kaplan,* for appellant.

*Lipshutz, Macey, Zusmann & Sikes, John M. Sikes,* for appellee.

ON MOTION FOR REHEARING.

CLARK, Judge. Appellant filed his motion for rehearing on two grounds. The first asserts the original opinion in this case was written by a judge who had not been present at the time of the oral arguments. (The writer's predecessor, Honorable George P. Whitman, was ill at that time and subsequently retired).

Although credit is to be given an advocate for his zeal in protecting the rights of his client, it should be noted that "oral arguments before the appellate court are intended to aid the court in understanding the points raised and discussed in the briefs filed by the parties." 5 CJS 529, Appeal and Error, § 1401 (b).

The writer of the Corpus Juris Secundum article points out the right to make an oral argument in an appellate court exists only in accordance with provisions of applicable statutes or rules of the court. The latest rules of this court became effective July 1, 1971, and are contained in volume 122 of Georgia Appeals Reports beginning at page 885. Rule 41 provides for consideration of appeals "with or without oral argument and a quorum of the division is present." It further provides: "counsel in no case shall have the right to demand that the oral argument be had by a full division merely because of the absence of the other member of the division, he not being disqualified from participating in the decision of the case."

Ground 2 of the motion for rehearing earnestly contends that reconsideration should be had of Division 6 of the original opinion. Here "the same ground is plowed" as was argued in the written briefs. Presentation of the same material fails to meet the requirements of subparagraph F of rule 33 which states the basis for granting a rehearing.

The motion for permission to make another oral argument is denied as well as the motion for rehearing.

*Judgment adhered to. Hall, P. J., and Eberhardt, J., concur.*